## FORNEY v. BENEDICT.

A promise by an executor or administrator, before or after the statute has barred the remedy for the testator's debt, cannot be replied to a plea of the statute of limitations.

A promise before the statute has completed the bar, is valid, being founded on the consideration of the injury to the creditor, by permitting him to repose on such promise; and, like the acknowledgment by payment of interest, such new promise will preclude the promissor from availing himself of the time then elapsed as a bar by the statute.

The *dictum* in Case *v.* Cushman, 1 Barr, 246, is not of general application, though correct under the circumstances of that case.

IN error from the Common Pleas of Lancaster.

*May* 12. Forney, administrator of Smith, declared in assumpsit, brought in 1845, against Benedict, administrator *de bonis non*, *c. t. a.* of Sumner, for money lent to his testator in 1834; in the first count laying the promise in that year; in the second count laying a promise by Reigart, his executor, in 1840; and in the third laying a promise by the present defendant, in 1845. To this the defendant pleaded *non assumpsit*, and *actio non accrevit infra sex annos.*

To this (so far as relates to the present question) the plaintiff replied, that testator died leaving a widow, and that his executor, in consideration of forbearance until her death, promised to pay out of the assets; and that plaintiff did forbear, and that the widow died, and the administrator *de bonis non* then promised to pay out of the assets. On the trial the plaintiff offered to prove his replication, and that none of the legatees ever objected, but acquiesced in the arrangement for the benefit of the widow. The reasons for the request to forbear being, that the executor did not wish to disturb the widow, who was an aged woman, by the sale of the assets.

The court (LEWIS, P. J.) was of opinion that such promises could not take the promise of the testator out of the statute; that the promises, being conditional, might bind the executor or administrator, but not the estate, and therefore rejected the evidence.

*Parke*, for plaintiff in error.—The evidence was rejected in fraud of the request of the very party who objects; 4 Rawle, 141. Though possibly it might be more proper to declare on the promise, yet custom has so sanctioned the practice of declaring on the old promise, and using the new one as evidence merely, that it is too late to alter it; 1 Har. & Gill, 204; 2 Bing. 308; 8 Wend. 600. The distinction, in fact, is between the keeping alive of an old cause of action, and a new substantive one; 2 Ves. & B. 275;

1 Sch. & Lef. 109. The only question, then, is whether such a promise be obligatory under the circumstances. This will appear to be so when a few principles are stated. There is a distinction between the rights of creditors and legatees as to the plea of the statute; 2 Fonb. Eq. 183; 4 Rawle, 148; 6 Watts, 250. As to the latter, the executor or administrator, who is bound to act justly, may decline taking advantage of the statute, and he is not responsible for an error in judgment; 4 Watts, 177; Toller on Ex. 343, 429; 1 Ashm. 352; 1 Whart. 71. As he may waive that right, so he may agree to waive it; and such agreement is binding on his *cestuis que trust*, more especially under circumstances like these, where the delay was out of mere kindness to one of the family, and the agreement acquiesced in by the very parties who now set up the bar. Such a defence would not be allowed, even to a surety; 8 Watts, 258. As to the form of the action, there is no misjoinder of counts; 1 Chit. Pl. 202, 206; which, with 8 Watts, 397, show that the promise, as laid, and offered to be proved, creating no personal liability, necessarily render the representative of the estate liable.

*Frazier*, contrà, argued that the promise, whether as laid, or to be proved, had no effect on the estate; 12 Wheat. 565; 1 Whart. 66; 7 Watts, 420; 1 Barr, 241; 6 Watts & Serg. 213.

GIBSON, C. J.—The point immediately before us was ruled in Fritz *v.* Thomas, 1 Whart. 66, in which the acknowledgment of an administrator was not allowed to revive the intestate's promise. The difference between that case and this, is, that the debt was barred at the time of the acknowledgment in the one, and not in the other; but that was not a distinction on which the cause was decided. Doubtless there are English cases for the doctrine that the acknowledgment of a debt stops the progress of the statute; we, however, hold that it continues to run, but that the acknowledgment creates a new and an independent promise, which, to be effectual, must, like every other promise, have a sufficient consideration to support it. In the present case, such a promise would have bound the executor personally, if at all; and even if there had been a consideration for it, yet the statute, continuing to run as it did against the original debt, would not have been the less available to him as a defence in the representative capacity in which he was sued.

The fact that the promise was made while the bar of the statute was still open, brings to mind a decision of my late brother Ken-

nedy, in Case v. Cushman, 1 Barr, 246, which seems to have struck the profession with surprise. "The debt was not barred by the statute," said he, "at the time the new promise is alleged to have been made; the plaintiff was still, and at the time, under a legal obligation to pay it; and without some consideration, which is not pretended, being given for the new promise, it was at most but a mere *nudum pactum*, and no cause of action could arise or accrue from it." Predicated thus generally, and without regard to the special circumstances of the case, it is not wonderful that the principle was received as a novelty, especially as we had held in Addams v. Seitzinger, 1 Watts & Serg. 244, that payment of interest, within the six years, which is only a constructive acknowledgment of the debt, creates an available promise. But the surprise will abate, if it do not cease, when we ascertain the true consideration of such a promise, which has erroneously been taken for the moral obligation that binds a man to payment of his debts. There is undoubtedly such an obligation; but while it is a *legal* as well as a moral one, an additional promise gives no additional sanction to it. The obligation is no more legal after it than it was before, and the promise leaves the rights and liabilities of the parties exactly where it found them. If there is a new and distinct promise to give a new and distinct start to the debt, it must have a new and distinct consideration to make it binding; for there cannot be two independent legal obligations, at the common law, resting on one consideration, and giving independent remedies to enforce the same duty. The doctrine of merger shows that; for if there were distinct promises, concurrent actions might be maintained on them, to the oppression of the debtor, which that doctrine forbids. It will scarce be pretended that an obligor's promise to pay his bond at maturity would ground an action of assumpsit for the debt; yet there would stand the legal promise, and there too would stand the moral consideration for it. In Bulstrode v. Gilburn, 2 Stra. 1027, assumpsit was not sustained for fees received by a deputy appointed by deed, who had entered into articles to account, because the principal had remedy by action of covenant. And in Toussaint v. Martinnant, 2 Term Rep. 100, it was held that it would not lie by a surety who had taken a bond of indemnity from the principal, because he had relied on that as his security. Of kin to them is Stilk v. Myrick, 6 Esp. 129, (2 Camp. 317,) in which Lord Ellenborough refused to sustain an action on a promise to pay a sailor extra wages for extra exertions; and to the same effect are Harris v. Watson, Peake's N. P. C. 72, and Newman v. Walters, 3 B. & P.

612. In these, the promise was not to perform a legal duty, but to pay for the performance of it; but an action on the agreement to perform would have been equally groundless, as the sailor was bound by his duty to do all that his situation, or the safety of the ship, required him to do.

I have said that two legal obligations cannot rest on the same consideration, at the common law. Yet it is undoubtedly true, that one parol contract does not extinguish another. But why? Because the second is no more than an acknowledgment of the first. The only apparent exception to this, is the case of a note or bill given for the price of goods at an extended credit, which, if it be not paid at maturity, does not prevent the seller from recurring to the original contract; and the reason is, that it is taken as conditional, and not absolute satisfaction. Where there has been no extension, the seller may declare on the note, or on the contract of sale, at his election; and that he may declare on the former as an instrument, instead of using it as evidence of the debt, is due to the 4 & 5 Anne, which added to, but did not abolish, his original recourse. The case of such a note, therefore, is a statutory exception to, and consequent proof of, the common law rule, that a second promise is only evidence of the first.

It may safely be affirmed, that no case can be produced in which a moral obligation already clothed with a legal one, was held to be a consideration for a new and separate promise. It was said by Lord Mansfield, in Hawkes v. Saunders, Cowp. 290, that "a *legal* or an equitable duty is a sufficient consideration for an actual promise; but the instances he gave are precisely those on which a legal obligation had been extinguished, or had never existed. Where a man," said he, "is under a moral obligation, *which no court of law or equity can enforce*, and promises, the honesty and rectitude of the thing is a consideration." But it is impossible to conceive of a legal obligation which no court can enforce, unless the remedy has been taken away by bankruptcy, or the statute of limitations. What he meant, is clear from the instances he put, of a debt thus barred, and a debt contracted by an infant for luxuries. At first view, his mind might seem to have inclined the other way; but his fault was a disposition to generalize too much, and it is shown in a note to Wennall v. Adney, 3 B. & P. 249, in which the effect of moral obligation, as a consideration, was well considered, that his sweeping expressions are to be confined to much narrower limits than he assigned to them.

But an additional promise within the six years is undoubtedly

binding; and what is the true consideration of it? It is certainly not any benefit from it which can be supposed to result to the debtor; and it must consequently be the injury it might work to the creditor by inducing him to repose on it till it would be too late. If the promise has not that consideration, it has none. It is, however, a valid consideration without doubt; and the acknowledgment which constitutes the promise, is similar to the acknowledgment of a demandant's title to land by one who is in adverse possession of it, which, for prevention of the injustice that might otherwise accrue from it, is construed to be an agreement to hold in subjection to the title. In Gaylord *v.* Van Loan, 15 Wend. 310, the Supreme Court of New York put an agreement not to plead the statute of limitations on the same ground.

But was there a possibility of injury from the promise in Case *v.* Cushman? The debt was contracted and payable in New York, and the effect of the acknowledgment was determinable by the law of that state as the *lex loci contractus*. The debtor resided in Pennsylvania, but visited New York when the debt had become due, and consequently put the statute in active operation. Subsequently, but before it had run its course, he acknowledged the debt in Pennsylvania; but would the law intend that the creditor had been put off his guard by it, when he had already lost the opportunity of suing in the courts of his own state? Instead of suffering himself to slip his time, he ought to have brought suit when the debtor was within his grasp. True, he might pursue him in the courts of Pennsylvania, but it was the law of New York that was to rule the cause, which was to be considered as if it were litigated there; and the statute of that state, like every other statute of limitations, was framed in conformity to a supposition that the creditor was to seek his remedy in his own courts; whence the usual saving in the case of absent debtors. Besides, a creditor can sue in a foreign state only by permission, and not by right. The creditor in Case *v.* Cushman, therefore, might have suffered by his own supineness, but not by his debtor's acknowledgment; and as no benefit accrued from the promise created by it, there was no consideration for it. All this is foreign to the case in hand, but it was not improper to show that the dictum of Mr. Justice Kennedy was neither a general application, nor yet in the particular case without foundation.

Judgment affirmed.